20-5562, 20-5563, Outfront Media LLC v. Performance Media LLC, Terry McMaster, Randall Powell, Randall Powell et al. Oral argument is as follows. 15 minutes for the plaintiff, 15 minutes to be shared by the defendant. Mr. Knight for the plaintiff. Hang on a second, they're not behind you yet. All right, you may proceed. Thank you, Your Honor. May it please the Court, Stephen Knight representing the appellants Terry McMaster and Performance Media. I've reserved 5 minutes for rebuttal. The central question presented by this case is whether Kentucky law is consistent with the common sense conclusion that landowners Randall and Brenda Powell reached. That they were entitled to sell or dispose of in any way they wanted 5 billboards that had been sitting unused, rotting on their property for more than a decade. The doctrine at issue, of course, is abandonment. And the facts supporting the conclusion that these billboards were abandoned is overwhelming. The main response to that argument by Outfront Media, which claims that it owned the signs in 2016 when they were sold, is that there were leases. These billboards were subject to leases that were still in effect in July of 2016. So the question whether these signs were subject to leases is virtually dispositive of the main question presented by this case. And, of course, we presented the Court with several reasons that these leases were not in effect in 2016. The strongest... Mr. Knight, if I can just ask a question. Sure. I mean, as I understand your argument, you think there is abandonment even if the leases remain valid. Is that right? Right. Yeah. But if the leases were invalid... I guess they're invoking the provision of the lease that says these things remain the lessee's property forever or whatever as some... I mean, how does that lease provision factor into the abandonment analysis, which is kind of a fact-bound intent question under Kentucky law? How does that lease provision kind of integrate into the abandonment analysis? So, Your Honor, it's a little bit confused because there are two sets of leases that were in effect. There's the 1983 leases and then three of the billboards, they signed new leases in 1998. The 1998 leases are a little bit stronger. They have a provision that says that the billboards shall not be considered abandoned at any time. The 1983 leases don't have that provision, but they say, as you point out, that they remain the property. And those leases, though, are sort of perpetually renewable unless you have explicit termination, are they not? Correct. Now, the problem with this, using this language to say that these leases, that abandonment can't happen over 13 years, 14 years of disuse, is, you know, we cite the Kentucky Cannell Coal case, which says that, you know, when you have a lease that has a provision saying the lessee has the right to remove this property at any time after lease termination, the court said, and this is the Kentucky Supreme Court said, that can't be read to go for an unreasonable amount of time. I mean, we read that to mean you can remove it within a reasonable amount of time. The provision in these leases saying, or in some of these leases saying that they shall not be considered abandoned at any time, is functionally the same thing. I think under the Cannell Coal case, you would have to read that to mean they won't be considered abandoned for a reasonable period of time. The Powells could have terminated these. I think certainly the earlier ones and maybe even the latter ones were in the one-year renewal period, I think, that they could have terminated them, you know, with proper notice on fairly short term, and they never did either. They could have. But I think that the only situation in which that becomes relevant is the issue of whether the leases were being used for their intended purpose. I think there's an argument that, you know, we argue that the leases state the purpose. When they stopped using it for that purpose, they weren't renewable anymore, and cite the court authority for that. They were trying, at least they said, why don't you get your state representative to let us cut those trees. In Rockcastle County, a lot of times your state representative can do a good job for you, can't they? And they eventually got that done in 2015. Now that goes to the breach argument, whether they breached the contract by not paying rent. But the fact that the Powell's had the right to cancel, I think that only comes into play with respect to using it for a particular purpose argument, where the cases that we cite involved a question of whether the leases were perpetual or not, and out front tries to distinguish those cases by saying, well, the Powell's had a right to cancel, so these are not perpetual leases, the Height and Lavitt cases don't apply. Our response to that is that the presumption against perpetual leases was not dispositive in the Height or Lavitt cases. In the Height case, the court recognized the presumption against perpetual leases, but it said that the lease provisions strongly indicated that the leases were not perpetual. So it doesn't really indicate that the presumption was dispositive of the question. And the leases in this case have similar provisions to the provisions that the Height court found, which were strongly indicative that the lease terminated when it was no longer used for that purpose. The Lavitt case is even more strongly indicates that the presumption didn't matter because the court- That doesn't square with the provisions of the lease to say that there can be an abatement of rent when there's a problem, vegetation or whatever, such that the billboard can't be used. So isn't that sort of an argument against your argument? I see Your Honor's point. Out front, of course, didn't raise that in that context, but if you actually had a basis for abating rent because you couldn't place advertising and the fact that advertising wasn't placed wouldn't be a good basis for saying the leases weren't used for that particular purpose anymore. Of course, we contend that that wasn't a temporary condition. When it's an indefinite period, it lasts for more than 13 years, that that's not what the leases mean by indefinite. But I do see Your Honor's point that there is a connection there between those two issues. But I just want to point out our strongest argument is none of the ones that we've been discussing. The strongest argument that the leases weren't effective is the illegality argument. And out front really doesn't contest any of the reasoning that establishes that these leases became unenforceable because they were illegal beginning in 2003. I guess the premise there is that the object of the lease, the purpose of the lease, how would you characterize it? I think the level of generality matters in this characterization. The rule is that contracts are invalid if they're connected to an illegal purpose. It's like selling narcotics would be an illegal purpose. To be candid with you, I'm struggling a bit to see. It depends on how you define it. If it's to advertise, that's not illegal. If it's to advertise 20 feet, I know that's not our case, from the highway, maybe it's illegal. Or maybe it is legal because the purpose is advertising, but the execution is in violation of a regulation. I'm struggling to see how to distinguish between those two different classes of situation. I think, sure, in general it's not illegal to have billboards. But there's circumstances in which it is. If they were three feet closer than they should have been and it was sort of an honest mistake, I'm struggling to see how that's a legal purpose and the whole thing is invalid. The problem in this case is that these billboards, it would have been illegal, it's undisputed, it would have been illegal to place advertising on them after 2003. That's because? That's because in 1976, billboards were generally prohibited, but some were grandfathered in. And Outfront's position is these were grandfathered in. The problem is you lose your nonconforming status if you don't place advertisements for a year. That's also undisputed. And advertising was not placed for 13 years, but after the first year, they lost their nonconforming status. So that determination of nonconformance, you would say, was never made by the state. That is, the state would have been, if you're correct about the situation, for example, they would say, well, we didn't place it because you put the trees up in front of us, right? But nobody ever had to worry about that because nobody ever claimed it was illegal until your lawsuit. Is that right? And nonconforming sort of sounds like it's a determination that's against the interests of Outfront, but it's actually Outfront, their position is these are nonconforming. We say there were never any permits. Their response is they don't need permits. They're nonconforming. So the only reason that they claim that they were ever legal, or after 1976 at least, is that they're nonconforming. So that's not something that we need to establish. That's their claim. Thank you. Good morning. Good morning. May it please the Court, Chris Brooker for Outfront Media. The trial court's rulings in this case were thorough and 100% correct. As the trial court observed, this case is more about title than it is tort. And the key question is who owned the billboards at the time Ms. LeMaster had them cut down? The leases and the district court answered that question correctly. It's Outfront. The leases' terms are simple and clear. The leases were never breached. Do the leases somehow trump altogether abandonment doctrine in Kentucky here? Yes, Your Honor. There's abandonment doctrine. What abandonment is is the voluntary relinquishment of possession and the intent to repudiate ownership. That is the common law definition. That did not happen here. But, I mean, I guess I'm skeptical that that question, which is a very fact-intensive question about intent, I'm skeptical that that is answered as a matter of law solely based on a contract that has sort of lain in destitute for 15 years, say. And meanwhile, you know, I mean, I think the contract could say one thing. Circumstances since the contract's execution, actually more like 20 years ago, hypothetically could point in a very different direction, and that might leave a fact question. Yes, Your Honor. I don't believe there's a fact question on the record that was before the district court and is before this court. So the lease is like, you know, one circumstance to take into account? Is that fair, but not itself sort of dispositive the way contracts often are? I believe the lease is dispositive first in that it says these billboards are not to be considered abandoned. But when you put on top of that the record proof in this case, such as sheets showing that Outfront monitored these billboards on a regular basis, and ultimately what led to this case was that Outfront noticed or wanted to use these billboards, take them down, and essentially cash them in for the credits that were under the new regulatory program. And the question is whether before then they had abandoned. So when was the last entry again for one of these logs? 2015 was the last entry on all five. And then 2017, early 2017, was when Outfront learned from the Kentucky Transportation Cabinet that the billboards had already been taken down by Ms. LeMaster in 2016. Those logs are consistent. There are entries going all the way back to the 90s, I believe. Was it like, I'm just curious, is it like on a certain regular frequency, or is it just sort of, you know, here's an entry and then six years later, and then three years later, nine years later, you know? It was not on an every six month basis, but it was fairly frequent. But sometimes it would be, if I remember correctly, not looking at them now, twice a year, once every year, maybe two year gap. If I'm looking at the Heading Continuous Call Report, it's close to once a year up through 09, and then it gets a little spotty to 12 and 15, although even in 15 they say we visually inspected the sign, and it's blocked still on hold pay, which means we're not going to pay because we can't use it. Is that the document you're talking about? That is it, Your Honor. And the existence of that document shows that these billboards were not abandoned. You do not keep track of and put record entries into your corporate records about billboards that you have, to use the correct term, voluntarily relinquished or intent to repudiate ownership. That is conclusive proof that in Outfront's mind, they are still the owners of those billboards. They are keeping track of them, they are making decisions on them, and that is buttressed by the language of the leases as the District Court found that shows that these billboards are not to be abandoned. They are not to be considered abandoned. I think that's a good summary of your position. And that there was an entry in, I guess, 2015 is, you know, that's a good fact for you. But the question here, I mean, you were granted summary judgment, and so the question here is whether you were entitled to judgment as a matter of law on this question, which is a factual question, but you can get S.J. on factual questions all day long. But whether on this record there is a genuine issue about intent at the relevant time. And I think, I mean, to my mind, I guess, and this is sort of just commonsensical, by far the strongest evidence they have is this sort of thing. You know, I mean, like this one over here, I know it's hard to see, but you put that in front of a jury and say, do you think they abandoned this? You know, I think that's, I guess I'm giving you my principal concern about your position. Not that I'm not already saying that creates a jury issue, but, you know, to my mind, maybe it does. The dilapidation of the billboards, Your Honor. Yeah. My response would be the dilapidation is a loss in value. It is not a loss in ownership. And these were still billboards. These still had values. I mean, this one's like a small. And that may be the one that the transportation cabinet. A public nuisance, literally, at that point. I understand what you're saying, Your Honor. And the transportation cabinet viewed these as billboards and gave credit for four of the five billboards because it saw four of the five billboards there. I guess the implication of your argument is that the Powells were powerless to remove this stuff from their property. They would have had to cancel the lease or whatever. They had the right to terminate the lease. That's correct, Your Honor. But then, you know, the lease itself doesn't necessarily decide the abandonment issue. I mean, this is a common law doctrine under Kentucky law. Yes. Right? And so, I mean, the parties can't necessarily write their way out of the common law in a contract. And so let's say they do cancel. It's conceivable to me that out front would continue to argue that we still own these things. And, you know, you should have, I mean, we should have a chance to remove them ourselves or something. I mean, in other words, even if, you could still say that there was abandonment, even if. If they had canceled, Your Honor, out front would have had a right within a reasonable time to come remove the billboards. And if they didn't, they would be abandoned at that point. Yeah. But they didn't cancel. There's a difference between abandoning something on property you have no right to be there. I don't pay my parking fee and I leave my Maserati on your parking lot as opposed to I have a 10-year lease and my Maserati's tires are flat. You can't take my car when I have a 10-year parking right. Exactly, Your Honor. That's exactly right. I will note for the record, too, those pictures were produced the last day of discovery. After all, depositions were done, essentially just dropped into the record. But I don't think it matters because, again, the leases control on this, like the district court said, there was no contrary evidence to establish that the Powells were now the owners of these billboards. The leases were there and they were written for the purpose of this very situation. They say, do not consider them abandoned. And when you buttress that with the record evidence that the district court had in front of it, there simply is no grounds, there is no basis for a factual dispute. There is no dispute that no rent was paid for a number of years. There is no dispute that no ads were sold. But that was because of the circumstance of the vegetation blocking the billboards. What about the evidence that that got cleared up, you know, in 2015 or something? I do not believe there is any record evidence. I believe the record evidence, as the court says in a footnote in its opinion, only showed that there were blockages. But even if that's the case, Your Honor, what that creates is a right for the Powells to terminate the lease. It does not terminate the lease in and of itself in any way automatically. What it gives is the Powells the right to come in and say, hey, it's been cleared up, you're not selling ads. You know, it puts your clients in breach, which, you know. Right. But this whole business about the lease is just, it's a somewhat awkward fit with a common law abandonment doctrine. I mean, I think it's relevant. I mean, basically the lease tells us at least in 1998 or 1983, these people thought that out front will continue to own the billboards basically, you know, as long as the lease is in effect. We know that then. I mean, it's conceivable that things could happen in the meantime that would amount to abandonment under Kentucky law. I don't think the lease can change that. But I understand that, you know, if the lease is still in effect, that, you know, as Judge Boggs says, that kind of helps you in the common law analysis. Yes, Your Honor. Just resisting the idea that the lease answers everything. I understand. But as between out front and the Powells, out front leased those premises and was the owner of the billboards. I hear what you're saying, but I believe that the leases, as the district court found, were never terminated. They were never invalidated. And as between out front and the Powells, the lease is controlled and out front is the owner of those billboards. There is no right for the Powells or Ms. LeMaster to come along and take those billboards down. Those were out fronts to take down at that point. Does that mean under some circumstances abandonment might mean the state could come in and take them down? The state would have a right. If the state found that the billboards were out of compliance, out of administrative compliance, they could start a procedure to have the billboards taken down. I believe so. But that's the state. That's not the lesser of the land. Your Honors, I think I've answered, unless there are any other questions, I think through these questions I have stated out front's position. And I would ask the court to affirm the district court's opinions, which I believe are lengthy, well-reasoned, and correct. Thank you. Thank you. We have another advocate. Good morning. May it please the Court. My name is Jeff Darling. I represent Randall and Brenda Powell in this case, the landowners that have been mentioned. I have very little to say because in this case it is our position that regardless of which way this court rules or the district court rules, if it was remanded back, the Powells are through with this case. They were brought into this case after out front sued Ms. LeMaster and Performance Media for ownership of the billboards. Ms. LeMaster brought the Powells into the case for indemnification, saying that if there were damages assessed against her by out front, which were claimed in the original suit, then she would have the right to come to the Powells for indemnity to repay her for any money she had to pay. The most significant thing in this case with regard to the Powells is that out front has withdrawn its damages claim. In this case, as of now, out front has been victorious. They have won the case, but they are asking for no damages from Ms. LeMaster, therefore there is no indemnification to the Powells. There are also claims for negligence and breach of contract, but in this case, if this court affirms the district court, then the ruling that the Powells did not own anything to transfer away stands and there is no negligence, there is no breach. If this court remands this case and the district court ultimately rules that out front is incorrect and that Ms. LeMaster does in fact own these because whether they were abandoned or whatever, that the Powells had authority to relinquish their ownership in this, then Ms. LeMaster has won and there is no claim against the Powells. Either way, the Powells should be out of this case. They were innocent landowners. Ms. LeMaster came to them in 2016 and said, I'd like to clear away these billboards and I'd like you to sign this form relinquishing any ownership. The Powells said, great, for the exact reasons that you kept pointing in those pictures, because they had these pretty unsightly billboards on their property and somebody was offering to clear them off and all they had to do was sign a document that was a Kentucky State Department of Transportation document, signing over whatever rights they may have had. As far as the Powells were concerned, this was an arrangement that their mother had made years ago. They knew nothing about it. They were more than happy to do that. Either way, I think they're out of this case. My time's up. I only took a couple of minutes. If there are no questions, I will just ask the court to fashion an opinion such that we'll release the Powells either way. Thank you. Thank you. I'd like to start with the 2015 entry in the continuous call reports. It was sort of presented as evidence that every six months or once a year, the out front was monitoring these signs. I don't think that's consistent at all with the record. Before that September of 2015 entry, the last entry before that is in January of 2009. That's six and a half years earlier. That entry is getting quote for removal. These are signs that had been put on the list, target list to remove in 2001 and 2002. Then all of those say no. Either the quote was too much or they decided to do something different. They decided not. They got a quote to remove and then apparently they decided not to. Out front sort of tries to spin that as evidence against abandonment. To me, if you decide to remove property, that's intent to exercise. When did the state start this credit program? Was that available back in 2009? I believe it was not available in 2009 for sure. Actually, I think it's interesting that you raise that because I think this very odd 2015 entry, at this point it didn't really matter whether they were blocked or not. It would have been illegal to put advertising on them. They were in no kind of shape to have advertising. You couldn't refurbish the signs even. That would have been illegal. I think what happened was in 2015, and out front points this out in their brief, the state began allowing some trimming of trees and things like that. My guess would be that out front just sent somebody out every billboard they know of that had been put on hold. They just did a survey. Some of these, for whatever reason, some of these also have an entry in 2012, not just in 2009. I sort of don't know why that was covered by some but not by others. But it's a sort of business decision. Do you want to pay enough to have it removed or do you want to take on spec what's going to happen going forward? Yes, you're right. There is at least one sign that has a 2012. Our position is, of course, that especially with respect to the 2015, the signs had been abandoned long before that. You can take all of our arguments, subtract a year from them, and it's the same argument. It had been illegal for 12 years instead of 13 years. All the time because each of these entries is kind of the same. As I understand, they have a guy who drives up and down the highways and sees what he can see because it says visual inspection of sign, visual inspection of sign. But do you think they were abandoned even before that, even before, say, 2009? Absolutely. Even though they were continuing to pay a guy to go by and look at them and see whether they were visible. Especially when you consider that it didn't really matter because they were not allowed to place ads on these signs. So what was the point of these inspections? Well, they're not allowed to if the state had the same view of the regulations and enforced them. Kentucky people do a lot of things that the state doesn't enforce against them. Right, Your Honor. But Out Front doesn't contest that. They don't contest that they were illegal. Their response to that is, so what? That doesn't change ownership. They don't contest that when they lost their nonconforming status in 2003, it was illegal to place advertisements on them. And it wasn't practical either. I mean, the signs, as of 1995, that was the last inspection that was done, and they said, you know, these signs are in bad shape. That's one of the purposes of the Billboard Act is to sort of age out these old signs. You're not allowed to repair them. You let them play out their natural life. These were signs that were built. They're wood signs. They were built in the late 60s and early 70s. By the mid-90s, their useful life was coming to an end. By 2002, 2003, they had used up their useful life, and you've seen the photographs there. It's perfectly consistent with the act that these signs were. It was illegal to use these signs. What do you make of this 2008 entry that runs through these different logs about sent KC letter requesting termination? Yeah, I think that the record indicates the depositions that were taken indicate that people aren't really sure what that means. Who's KC? Any idea? Don't know. It doesn't match up with the lessors. There's no initials that I'm aware of that that matches in the record. So it's not clear whether that was someone internal to Outfront or whether those were sent. But I think it is worth noting that that was sent out in September of 2008, and in January of 2009, just a few months later, quotes to remove the billboards were requested. So that raises an inference at least that they considered at that point the leases to be formally terminated. Of course, we would argue they were terminated. Well, it may have been also though to request either an internal lawyer or an external lawyer to terminate the leases, which didn't happen. And we would say formally terminate them, give notice, send a registered letter. Which at least in some, you know, if one is a hyper-careful lawyer, that would also terminate any obligation you would have to pay rent forward. If some other lawyer comes in and says, oh, my God, you should have paid rent. Or potential liability if these billboards are such a hazard as they apparently were. But nevertheless, it didn't. A lot of hyper-careful lawyers on all sides of this. Thank you, Your Honor. Thank you very much, and the case is submitted.